IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DANIEL FUNKE, ) | Civil Action No. 5:14-CV-307 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DEUTSCHE BANK NATIONAL ) | |
| TRUST COMPANY, AS INDENTURE ) | |
| TRUSTEE OF THE AAMES ) | |
| MORTGAGE INVESTMENT TRUST ) | |
| 2005-1, and JOHN CRAIG, ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER DENYING MOTION TO REMAND TO STATE COURT

On July 21, 2014, the Court heard argument on a Motion to Remand filed by Plaintiff Daniel Funke ("Funke"). ("Mot.," Dkt. # 8.) Ross Elliott, Esq., appeared on behalf of Funke; Jeremy J. Overbey, Esq., appeared at the hearing on behalf of Defendant Deutsche Bank ("Deutsche Bank") and Defendant John Craig ("Craig") (collectively, "Defendants"). After careful consideration of the arguments at the hearing as well as the supporting and opposing memoranda, the Court **DENIES** Funke's Motion.

BACKGROUND

I.  Factual Background

Funke became the legal owner of the house at 110 Oak Bluff Blvd., Boerne, Texas, 78006 (the "Property") in 2000 and originally financed the purchase through his grantor. ("Pet.," Dkt. # 1, Ex. B-1.) On December 9, 2004, he refinanced the Property through independent financing and executed a Texas Home Equity Adjustable Rate Note with Deutsche Bank's predecessors in interest. (Id. ¶ 5.) The note was secured and a deed of trust was executed. (Id.)

In 2008, Funke fell behind on mortgage payments and began to receive notices of late payment and notices of default from both Deutsche Bank and Deutsche Bank's predecessor in interest. (Id. ¶ 6.) In late 2008 Deutsche Bank accelerated the note and filed an application for a home equity foreclosure order in the County Court at Law for Kendall County. (Id. ¶ 7.) The court entered default judgment against Funke on January 16, 2009, which authorized Deutsche Bank to sell the property at a foreclosure sale. (Id.) However, Deutsche Bank did not conduct a foreclosure sale.

On September 12, 2013, Deutsche Bank applied for another foreclosure order.[1] (Id. ¶ 10.) It obtained and recorded another default judgment

---

[1] Funke claims that Deutsche Bank could not reapply to foreclose on his property because the note became void on January 16, 2013 after Deutsche had failed to sell the property within four years of accelerating the note. (Pet. ¶ 10.) Defendants

against Funke. (Id.) On October 3, 2013, Deutsche Bank appointed Defendant John Craig as a substitute trustee. ( Dkt. # 12, Ex. B.) Craig then recorded a notice of foreclosure sale in the Kendall County courthouse and filed a copy of the notice with the county clerk of Kendall County. (Id., Ex. C.) On January 7, 2014, Craig conducted the foreclosure sale of the property to Deutsche Bank and then executed a Foreclosure Sale Deed. (Pet. ¶ 10.) Deutsche Bank subsequently initiated a Forcible Entry and Detainer claim against Funke. (Id.)

II.     Procedural History

On March 17, 2014, Funke brought this suit in the 216th District Court, Kendall County, Texas, against Deutsche Bank and Craig, claiming causes of action for trespass to try title, quiet title, and fraudulent lien. (Id. ¶¶ 11–13.) Deutsche Bank removed the case to this Court on April 4, 2014, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Dkt. # 1.) Deutsche Bank asserted that Craig, a non-diverse party, was improperly joined and a nominal party who should be disregarded for purposes of diversity jurisdiction. (Id. ¶¶ 12–15.) Funke filed the instant Motion to Remand to state court on May 2, 2014, claiming that Craig was a necessary party and that this Court lacked diversity jurisdiction. (Mot. at 1.)

---

deny this allegation by Funke that the note or power of sale became void. (Dkt. ## 5, 6.)

DISCUSSION

A defendant can remove to federal court any civil action brought in state court over which the district court would also have had original jurisdiction. 28 U.S.C. § 1441(a); Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013). A federal district court has original subject-matter jurisdiction over a state claim when the amount in controversy exceeds $75,000 and there is complete diversity between the parties (i.e., the parties are "citizens of different States"). 28 U.S.C. § 1332(a); Mumfrey, 719 F.3d at 397. The Supreme Court has interpreted this statute to require "complete diversity"—that is, the citizenship of every plaintiff must be different from that of every defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

When removal is sought, the plaintiff's claims outlined in its state court petition at the time of removal determine if federal jurisdiction exists and any ambiguities contained therein must be construed in favor of remand. Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). For a suit to be remanded, the plaintiff's petition must present a reasonable case against a non-diverse defendant. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004). To remove an action, the party seeking federal jurisdiction bears the burden of demonstrating that original subject-matter jurisdiction lies in the federal courts. Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255, 258 (5th Cir.

2014).

I. Amount in Controversy

Funke seeks, inter alia, a declaration that the note is void, a declaration that the foreclosure sale deed is invalid, actual damages, exemplary damages, attorneys' fees, and costs of court. (Pet. ¶¶ 11–15.) When declaratory or injunctive relief is sought, the Fifth Circuit measures the amount in controversy by the value of the object of the litigation, which is measured by the losses that will follow. Webb v. Investacorp, Inc., 89 F.3d 252, 256 (5th Cir. 1996). Although Funke does not expressly demand a specific amount in excess of $75,000, the Fifth Circuit allows a defendant to "support federal jurisdiction by setting forth the facts —[either] in the removal petition [or] by affidavit—that support a finding of the requisite amount." Garcia v. Koch Oil Co. of Tex., Inc., 351 F.3d 636, 639 (5th Cir. 2003). The Kendall County Appraisal District values the property at $185,660.00. (Dkt. # 1, Ex. C-1.) Even excluding the attorneys' fees and additional relief sought by Funke, the interest at stake for both Funke and Defendants clearly exceeds $75,000.

II. Complete Diversity

Neither Funke nor the Defendants contest the citizenship of the joined parties. Plaintiff Daniel Funke and Defendant John Craig are both citizens of the State of Texas. (Dkt. # 1 ¶ 7.) Defendant Deutsche Bank is a citizen of the State

of New York.  (Id. ¶ 8.)  Because complete diversity does not exist, Deutsche Bank, as the removing party bears the burden of convincing the court that Craig is a nominal party that should be disregarded for purposes of diversity jurisdiction.  See Energy Mgmt. Servs., LLC, 739 F.3d at 258.

The Supreme Court has held that while § 1332 grants federal courts the power to hear controversies between "citizens of different States," the "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.  McNutt v. Bland, 43 U.S. 9, 15 (1844).  Therefore, federal courts must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.  Id. at 14; see also Navarro Sav. Ass'n. v. Lee, 446 U.S. 458, 460–61 (1980).

This disregard, commonly referred to as the improper-joinder doctrine, is a narrow exception to the requirement that there must be complete diversity between parties in order for a federal court to exercise diversity jurisdiction.  McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005).  In other words, if a defendant has been improperly joined, the citizenship of that defendant is disregarded for purposes of determining diversity jurisdiction.  Borden v. Allstate Ins. Co., 589 F.3d 168, 171 (5th Cir. 2009) ("The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity.").  Because the

removing party bears the burden of establishing proper removal, the burden of demonstrating improper joinder of a non-diverse defendant also falls on the removing party.  Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242 (5th Cir. 2011).

"To establish a claim for improper joinder, the party seeking removal must demonstrate either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  McDonal, 408 F.3d at 183 (quoting Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003)).  Actual fraud is not at issue here.  Thus, Defendants must show, under the second prong, that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  Id. (quoting Smallwood, 385 F.3d at 573).  "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed fraudulent."  Id.

To determine whether a reasonable basis of recovery exists, courts examine whether the plaintiff might possibly prevail against the non-diverse defendant in state court.  Smallwood, 385 F.3d at 573.  Courts often utilize a Rule 12(b)(6)-type analysis, looking initially at allegations in the complaint to determine if there is a reasonable basis to predict whether the plaintiff might be able to

7

recover against the in-state defendant in state court.  Id.; see also Mumfrey, 719 F.3d at 401 (holding that if a plaintiff cannot survive a Rule 12(b)(6) challenge against an in-state defendant, that defendant was likely improperly joined).  Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To determine whether Funke has a reasonable basis for recovery against Craig in state court, the Court will examine Funke's sole claim against Craig—that is for violating Texas Civil Practice and Remedies Code § 12.002.  That section provides:

> A person may not make, present, or use a document or other record with:
>
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and
>
> (3) intent to cause another person to suffer:
>
>> (A) physical injury;

>    (B) financial injury; or
>
>    (C) mental anguish or emotional distress.

Tex. Civ. Prac. & Rem. Code § 12.002(a).  Essentially, to prevail on a fraudulent lien claim under § 12.002(a), Funke must plead and prove that Craig (1) made, presented, or used a document with knowledge that it was a fraudulent lien, claim against, or an interest in real property; (2) intended the document be given legal effect; and (3) intended to cause Funke financial injury.  See Gray v. Entis Mech. Servs., L.L.C., 343 S.W.3d 527, 529–30 (Tex. App. 2011).

### A.  Lien or Claim Against Real Property

Deutsche Bank argues that Funke's § 12.002 claim must fail because Craig's presentment of a "Notice of Foreclosure" does not constitute either a lien or claim against real property as required by § 12.002(a). (Dkt. # 15 at 2.)  In response, Funke alleges that "by filing the notice of foreclosure sale without support from a valid deed of trust, Craig was asserting a fraudulent lien or claim against Funke's property."  (Dkt. # 13 at 2 (citing Pet. ¶ 13).)

The Court has searched in vain for a case discussing whether a "notice of foreclosure" constitutes a "claim against real property" for purposes of § 12.002. Most cases dealing with § 12.002's "claim against real property" provision exclusively address assignments.  See, e.g., Saucedo v. Deutsche Bank Nat. Trust Co., SA-12-CV-00868-DAE, 2013 WL 656240, at *5 (W.D. Tex. Feb. 20, 2013)

9

("[T]he assignment challenged by Plaintiffs does not purport to create a lien or claim; it merely purports to transfer an existing deed of trust from one entity to another.  Thus, Plaintiffs have failed to allege facts adequate to state a plausible claim for relief under § 12.002." (internal quotation marks and citation omitted)); Martinez v. Wells Fargo Bank, N.A., No. SA-12-CV-789-XR, 2013 WL 1562759, at *7 (W.D. Tex. Apr. 12, 2013) (holding that an assignment of deed of trust does constitute a claim against real property under § 12.002).

In Marsh v. JPMorgan Chase Bank, N.A., the court observed that the Texas Legislature's purpose in enacting § 12.002 was to "creat[e] a private cause of action against a person who files fraudulent judgment liens or fraudulent documents purporting to create a lien or claim against real or personal property in favor of a person aggrieved by the filing." 888 F. Supp. 2d 805, 813 (W.D. Tex. 2012) (quoting House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 1184, 75th Leg., R.S. (1997)) (emphasis added).  Accordingly, the court held that "in order to state a fraudulent lien claim under Section 12.002, a party must allege the challenged instrument 'purport[ed] to create a lien or claim against property.'" Id. (emphasis added).  However, in Bernard v. Bank of America, N.A., the Texas Court of Appeals signaled that filing a "Substitution of Trustee" document satisfied § 12.002's "claim against real property" requirement.  No. 04-12-0008-CV, 2013 WL 441749, at *4 (Tex. App. Feb. 6, 2013).  There, the court affirmed the entry of

10

summary judgment under § 12.002(a) against homeowners who unilaterally drafted, signed, and filed a "Substitution of Trustee" document in an attempt to prevent a bank from lawfully foreclosing on a lien against their property. Id. In its analysis, the court assumed that the "Substitution of Trustee" document was a "claim" against real property within the meaning of Chapter 12. See id. In Howard v. JP Morgran Chase, NA, this Court recognized the dichotomy between Marsh and Bernard and noted that "the Marsh court's reading of § 12.002(a) [was] overly narrow." CV No. SA-12-CV-00440, 2013 WL 1694659, at *12 (W.D. Tex. Apr. 18, 2013). This Court also emphasized that § 12.002's plain language not only includes claims against real property, but also claims against "an interest in real . . . property." Id. (quoting Tex. Civ. Prac. & Rem. Code § 12.002(a)).

With Bernard in mind and in the absence of any specific direction from the Texas state courts, this Court finds that Craig's "Notice of Foreclosure" filing can constitute at least a claim against an interest in real property as permitted by § 12.002(a).

B.  Knowledge that the Document was Fraudulent

Funke's Petition claims that Craig knew that "the note[2] was void yet intended that the foreclosure judgment, notice of foreclosure sale, and foreclosure

---

[2] Funke switches between asserting that the note was void, (see Pet. ¶ 13), and the deed of trust was void (see Mot. at 4). Nevertheless, the distinction is irrelevant as will be discussed infra.

11

deed be given legal effect." (Pet. ¶ 13.) According to Funke, these assertions allege sufficient facts to state a claim under § 12.002. (Mot. at 4–5.)

However, even accepting Funke's allegations that the note was void, he failed to allege any facts suggesting that Craig had any knowledge that the notice of foreclosure was void as required by § 12.002(a). See Gonzales v. Bank of Am., N.A., --- F. App'x ----, No. 13-50957, 2014 WL 2937028, at *3 (5th Cir. July 1, 2014) (finding that the substitute trustee was improperly joined because the plaintiffs' sole claim against the substitute trustee could not survive a Rule 12(b)(6) challenge given that the § 12.002 claim failed to allege any facts suggesting that the substitute trustee was aware of the documents' ineffectiveness). Instead, Funke merely recites "nothing more than a 'formulaic recitation of the [§ 12.002(a)] elements,'" which has been repeatedly deemed insufficient to survive a Rule 12(b)(6) motion. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (quoting Twombly, 550 U.S. at 555). Without pleading sufficient facts to show that Craig had knowledge that the notice of foreclosure was void, see Tex. Civ. Prac. & Rem. Code § 12.002(a) (requiring "knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property"), Funke cannot maintain a claim against Craig under § 12.002.

Nevertheless, Funke asserts that "Craig had actual or constructive

knowledge that the deed of trust was void yet intended the fraudulent notice of foreclosure sale be given effect" because "[a]fter all, the foreclosure order in cause number 08-503CCL was recorded in the deed records against Funke's home." (Dkt. # 13 at 2.) According to Funke, Craig's "actual or constructive knowledge" is sufficient to satisfy § 12.002(a)'s knowledge requirement.

Although § 12.002(a) does not necessarily foreclose the possibility that the statute's reference to "knowledge" includes "constructive knowledge," the Court finds that § 12.002(c)'s rather broad liability for a § 12.022(a) violation—including, at a minimum damages liability exceeding $10,000—likely does not encompass constructive knowledge. In fact, holding substitute trustees broadly liable for having "constructive knowledge" would largely eviscerate the legislature's purpose in providing a good faith exception for a substitute trustee's liability under Texas Property Code § 51.007(f). Moreover, Texas law has consistently held that substitute trustees have no affirmative duty to investigate into the validity of the proceedings "beyond that required by the statute or the deed of trust to ensure a fair sale." Minella v. Bank of Am., N.A., SA-14-CV-174-XR, 2014 WL 1330554, at *3 (W.D. Tex. Apr. 1, 2014) (citing First State Bank v. Keilman, 851 S.W.2d 914, 924 (Tex. App. 1993)). Therefore, the Court finds that § 12.002(a)'s knowledge requirement does not encompass constructive knowledge.

In sum, although a "notice of foreclosure" likely constitutes a "claim

13

against an interest in real property" under § 12.002, Funke has not alleged sufficient facts that Craig had the requisite knowledge that the notice of foreclosure was a fraudulent document as required by § 12.002(a). Therefore, Funke does not have a reasonable basis for recovery against Craig, Craig was improperly joined, and Craig is a nominal party whose Texas residency will not defeat diversity jurisdiction.

In the alternative, Funke relies on Mangum v. America's Servicing Co., No. G-11-CV-237, 2011 WL 7429434 (S.D. Tex. Oct. 12, 2011), to argue that diversity jurisdiction is improper because Craig is not a nominal party. Analogizing the facts of Mangum, Funke argues that Craig similarly acted outside the scope of a substitute trustee and should be liable in his individual capacity. (Mot. at 4–5.) There, the Mangums had their house foreclosed upon in 2005, but at some point following the foreclosure sale, an agent of MERS told the Mangums that the foreclosure sale was going to be "undone." Mangum, 2011 WL 7429434, at *1. Toward this end, on July 6, 2005, Gilson, an individual claiming to be acting as a substitute trustee for MERS, prepared a "Rescission of Substitute Trustee's Deed and Affidavit to Purge," which he filed in the deed records. Id. Years later after several home loan modifications, the Mangums' home was again foreclosed upon. Id. at *2. They subsequently filed suit against the bank and Gilson, and the bank removed to federal court. Id. The Mangums then filed a

motion to remand back to state court. Id. The district court found that remand was appropriate because there was a reasonable basis to recover against Gilson. Id. at *4–5. The court held that because Gilson unilaterally declared the initial deed sale void to effectuate the rescission on his own volition (though he had no authority to do so), "Gilson was acting outside his authority as a substitute trustee when he attempted to 'rescind' the 2005 foreclosure sale." Id.

Funke seizes upon Mangum's holding to assert that "Craig had no power to act as the substitute trustee because the instrument which purported to authorize a substitute trustee's appointment was void," "Craig could not exercise the power of sale because it too was void," and "[w]ithout a valid deed of trust or power of sale, Craig could only act as an individual." (Mot. at 4.) However, Mangum is easily distinguishable. The Mangum court emphasized that Texas law does not allow a single party to unilaterally declare a deed void without resorting to a legal suit to determine the status of the deed and that Gilson's unilateral decision to declare the deed sale void, combined with his subsequent filing of the Rescission, went well beyond the scope of his authority as a substitute trustee. Mangum, 2011 WL 7429434, at *5. Moreover, Gilson had no authority to act following the foreclosure. Id. Here, in contrast, Craig performed only routine substitute trustee duties and Funke failed to present any plausible facts from which

15

the Court could infer that he had knowledge that the deed of trust was void.[3]

Funke's Reply claims that "[t]he evidence will show that Craig intentionally committed acts that he knew were substantially certain to cause mental and financial injury to Funke." (Dkt. # 13 at 6.) These bare allegations that Craig acted intentionally are insufficient to establish that Craig acted outside the scope of his role as a substitute trustee.

Moreover, even assuming that Craig was acting under a void deed of trust, he can still avail himself of the statutory protections provided by § 51.007(f), which shields trustees from liability "for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." Tex. Prop. Code § 51.007(f). Funke has not alleged sufficient facts to challenge a finding that Craig acted in good faith on information provided to him by the mortgagee. Craig's Declaration demonstrates that he had no knowledge of any

---

[3] It is ironic that Funke predominantly relies on Mangum to support his assertion that Craig acted in his individual capacity by executing a "void" deed. Mangum went to great lengths to discuss how the court could "find no case in Texas which st[ood] for the proposition that a single party may unilaterally declare a deed void without resorting to legal suit to determine the status of the deed. Indeed, every case [the court found] dealing with a void deed [was] just that: a legal suit involving the status of a deed." Mangum, 2011 WL 7429434, at *5. Despite this language in Mangum, Funke repeatedly maintains that Craig must have been acting in his individual capacity because he executed a "void deed." (See Mot. at 4 ("[Craig] was acting in his individual capacity because the deed of trust was void when he recorded notice of foreclosure sale.").) Yet, there had not been—nor has there been—any legal suit to determine whether the deed of trust was void or not.

potential claims regarding the validity of the documents or foreclosure sale.  (Dkt. # 12, Ex. A.)  Therefore, § 51.007(f)'s safe-harbor provision stands as another reason why Funke would not have a reasonable basis for recovery against Craig in state court, making Craig a nominal party whose citizenship shall be disregarded for diversity jurisdiction purposes.

Accordingly, because the amount in controversy is satisfied and complete diversity exists, this Court has subject-matter jurisdiction and Defendants properly removed this action to federal court.

## CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Funke's Motion to Remand (Dkt. # 8).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 31, 2014.

_____
David Alan Ezra
Senior United States Distict Judge